**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01330-CMA-KLM

ANTONIO BLANCO,

    Plaintiff,

v.

STERLING JEWELERS INC.,

    Defendant.

---

**ORDER GRANTING MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**

---

    This matter is before the Court on Defendant's Motion to Stay Proceedings Pending Referral to Sterling's Mandatory Arbitration Program (Doc. # 7) and Plaintiff's Motion for Legal Determination as to Unenforceability of One Year Claim Limitation (Doc. # 13).  The specific dispute in this employment discrimination lawsuit is whether Defendant has waived its right to force Plaintiff's claims into arbitration and, if not, whether the parties' agreed-upon one-year limitations period for bringing such claims is valid and enforceable.  Having reviewed the parties' submissions, the Court finds that no waiver has occurred and that the one-year period is not unreasonable as a matter of law.  However, considering the specific facts of this case, the Court also finds that equity demands Plaintiff be given a chance to proceed to arbitration rather than face a time bar.  Defendant's motion is granted, and Plaintiff's motion denied, with that caveat in place.  These proceedings will be stayed pending the result of the arbitration process.

## I. **BACKGROUND**

Plaintiff is a former employee of Defendant's Jared the Galleria of Jewelry store in Loveland, Colorado. (Doc. # 1 at 7 of 19.) At the time he commenced employment, Plaintiff signed an agreement consenting to use Defendant's "RESOLVE" program to mediate most employment-related disputes. (Doc. # 7-3 at 9-10 of 45; *see also* Doc. # 14 at 2 (acknowledging receipt and endorsement of agreement).) RESOLVE is a multi-step process that culminates in binding arbitration. (Doc. # 7-3 at 9 of 45.) The arbitration agreement provides that, for covered claims, the employee waives his rights "to obtain any legal or equitable relief (*e.g.*, monetary, injunctive or reinstatement) through any court, and [he] also waive[s] [his] right to commence any court action to the extent that is permissible under law." (*Id.*) Even so, nothing in the agreement "precludes either party from filing a charge or complaint with appropriate governmental administrative agencies . . . , although the parties waive their right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies to the extent that is permissible by law." (*Id.*) Of particular importance to the present litigation, the agreement also provides that

> [u]nless prohibited by law, a demand to use the RESOLVE Program must be made in writing and must be postmarked or delivered to the RESOLVE Program Administrator no later than one (1) year after the alleged unlawful conduct has occurred. Failure expressly to demand use of RESOLVE, in writing, within that time limitation shall serve as a waiver and release with respect to all such claims.

(*Id.*)

Plaintiff was terminated on January 23, 2008.  (Doc. # 1 at 10 of 19 ¶ 41.) Shortly thereafter, Plaintiff began to take steps towards litigation.  Plaintiff claims – and Defendant does not dispute – that on July 15, 2008, he filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC").  (Doc # 14 at 4.) Defendant responded to this charge a month later, on August 17, 2008.  (*Id.*)  The EEOC issued Plaintiff a "right-to-sue" letter on February 26, 2009.  (*Id.*)  On May 12, 2009, a year and a half after Plaintiff's termination, he filed this lawsuit.  (*Id.*)  The case was originally filed in the state district court in Larimer County, Colorado, but was removed to this Court on June 8, 2009.  (*See* Doc. # 1.)

After the case was filed but prior to removal, Defendant sent correspondence to Plaintiff asserting – for the first time since Plaintiff's termination – that Plaintiff was contractually bound to arbitrate the dispute.  (Doc. # 14 at 6; *see also* Doc. # 7-3 at 28-29 of 45.)  Plaintiff responded and expressed concern that, if he dismissed his case, Defendant could invoke the one-year limitations period in the arbitration agreement to bar arbitration altogether.  (Doc. # 7-4 at 11 of 17.)  Plaintiff asked Defendant to agree that he could use the RESOLVE program in the event that he withdrew his lawsuit.  (*Id.*) Defendant refused to waive any timeliness defense that it might have.  (Doc. # 7-4 at 15 of 17.)

On June 12, 2009, Defendant filed an answer to Plaintiff's complaint and a motion to stay the proceedings pending arbitration.  (Doc. ## 6, 7.)  Plaintiff opposed the motion to stay and contemporaneously filed his own motion seeking a determination

that the one-year limitations period in the arbitration agreement was unreasonable as a matter of law. (Doc. ## 13, 14.) Both motions are fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

The Federal Arbitration Act (the "FAA" or the "Act") provides a procedure by which a party may seek to stay a court proceeding in the face of a binding arbitration agreement. Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

## III. ANALYSIS

Plaintiff does not dispute that he signed the arbitration agreement (Doc. # 14 at 2) or that it covers the claims at issue in this lawsuit (Doc # 13 at 5). Indeed, Plaintiff concedes that arbitration would typically be the proper remedy in this situation. (Doc. # 14 at 5.) Rather, Plaintiff targets the equities of this particular dispute. Plaintiff urges that Defendant has waived its right to force arbitration by not timely demanding it. But if

the case is referred to arbitration, Plaintiff argues, the agreement's one-year limitations period should be found to be unenforceable. The Court considers these issues in turn.

Plaintiff first contends that Defendant was given "ample notice" of Plaintiff's claims but waited until the agreement's limitations period had expired before seeking arbitration. (Doc. # 14 at 5-7.) Due to this "failure to timely disclose the mandatory [a]rbitration [a]greement," Defendant should be precluded from forcing this matter to arbitration now.[1] (*Id.* at 6.) However, it is not correct to say Defendant did not *disclose* the agreement. Plaintiff signed the agreement and is presumed to know its terms. The more precise question is whether Defendant's failure to *invoke* the agreement resulted in waiver? Before answering that question, the Court must determine whether this is the right forum for the question to be posed in the first place.

The Supreme Court has outlined the division of labor between courts and arbitrators in interpreting and enforcing arbitration agreements. Substantive questions of arbitrability – such as whether parties are bound by an agreement or whether the agreement covers the dispute in question – are gateway issues for the court. *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 84 (2002). On the other hand, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (quotations and

---

[1] Plaintiff also invokes the doctrine of fraudulent concealment. As its name implies, fraudulent concealment requires some affirmative action by the other side to hide the activity subject to the limitations period. *See, e.g.*, *Khler v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997). There is no indication that Defendant took any such steps or engaged in any fraud, and thus the doctrine is inapposite here.

citation omitted).  Examples of such procedural questions include "allegations of waiver, delay, or a like defense to arbitrability."  *Id.* (quotations and citation omitted).

At first glance, this reference to "waiver" and "delay" might suggest that the issue in this case, to wit, whether a party's litigation-related conduct[2] has waived the right to invoke arbitration, should be left up to the arbitrator.  However, while not unanimously, many courts have held that the issue of waiver by conduct remains a threshold question for the court.  *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) ("*Howsam* did not disturb the traditional rule that the courts presumptively resolve waiver-through-inconsistent-conduct claims."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-18 (3d Cir. 2007) ("[T]he Supreme Court did not intend its pronouncements in *Howsam* and *Green Tree [Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003)] to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court."); *Marie*, 402 F.3d at 14 ("[T]he Supreme Court in *Howsam* and *Green Tree* did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court."); *Price v. Random House Inc.*, No. 07-cv-1347, 2009 WL 3415821, *6 (D. Colo. Oct. 16, 2009) ("Whether the Plaintiffs, by their litigation conduct, have waived the right to arbitrate is a matter for this court to determine."); *but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (question of whether plaintiff waived the right to

---

[2]  Participating in proceedings before the EEOC, a necessary prerequisite to filing a lawsuit, is "litigation-related" conduct.  *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 14 (1st Cir. 2005).

arbitrate by "pursu[ing] litigation in the Oklahoma courts on reinsurance contracts to which [defendant] is a party" was for the arbitrator, citing *Howsam*); *RMES Commc'ns, Inc. v. Qwest Bus. Gov't Servs., Inc.*, No. 05-cv-2185, 2006 WL 1183173, *5 (D. Colo. May 2, 2006) (rejecting *Marie*'s reasoning and finding that waiver questions are for the arbitrator).

The Tenth Circuit has not yet addressed this question, *see Price*, 2009 WL 3415821 at *6, although prior to *Howsam* the court routinely determined issues of waiver-by-conduct. *See, e.g.*, *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-90 (10th Cir. 1994).[3] Considering the reasoning of the above-cited cases, the Court is convinced that those cases reserving such determinations to the courts reach the correct conclusion. Waiver often turns on whether a party is attempting to "game the system," and courts are "most adept at policing procedure-abusing process." *JPD, Inc.*, 539 F.3d at 394. Moreover, the waiver determination does not advance the merits of a dispute, it simply sets the forum. Passing a case from the court to the arbitrator to decide whether the case should be sent back to the court would be "exceptionally inefficient," *id.* – something arbitration is designed to avoid. For these reasons, the question of whether Defendant's conduct constitutes waiver is properly for the Court to decide.

---

[3] Defendant suggests the Tenth Circuit has weighed in on the side of deferring all waiver issues to the arbitrator, citing to *McCauley v. Halliburton Energy Servs., Inc*, 161 F. App'x 760 (10th Cir. 2005). (Doc. # 16 at 5 n.2.) The Court disagrees. *McCauley* simply and cursorily noted *Howsam*'s language about deferring issues of "waiver, delay, or a like defense" to the arbitrator. 161 F. App'x at 765 n.7. The court did not consider the specific waiver-by-conduct question at issue in this case.

Whether waiver has occurred is a question of federal law. *See, e.g.*, *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) ("[T]he question of whether a party has waived its right to compel arbitration directly concerns the allocation of power between courts and arbitrators. Accordingly, the FAA, and not [state] law, supplies the standard for waiver.") (citations omitted); *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) ("Our determination of whether [plaintiff] waived its right to arbitration . . . is controlled solely by federal law."); *Danny's Const. Co., Inc. v. Birdair, Inc.*, 136 F. Supp. 2d 134, 142 (W.D.N.Y. 2000) ("[I]t is federal law, not state, that governs the inquiry into whether a party has waived its right to arbitration."); *NOS Commc'ns v. Robertson*, 936 F. Supp. 761, 765 (D. Colo. 1996) (holding that waiver should be decided under federal law). "[A] party alleging a waiver of arbitration bears a heavy burden of proof," *MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/American Exp., Inc.*, 886 F.2d 1249, 1260 (10th Cir. 1989), and must show an "unequivocal demonstration of intent to waive," *Hill v. Ricoh Am. Corp.* 634 F. Supp. 2d 1247, 1255 (D. Kan. 2009); *see also Metz*, 39 F.3d at 1489 (noting factors informing whether waiver has occurred).

Plaintiff contends that Defendant's first mention of the arbitration agreement came in late May and early June of 2009, following the completion of the EEOC proceedings and shortly after the filing of this lawsuit. (Doc. # 14 at 6.) Fairly read, Plaintiff's theory is that Defendant's silence during the EEOC proceedings waived its right to compel arbitration. While perhaps appealing at first glance, ultimately, the argument fails.

Numerous courts, including the Tenth Circuit, have ruled that the failure to seek arbitration during EEOC proceedings does not constitute waiver. *Dexter v. The Prudential Ins. Co. of Am.*, No. 99-3137, 2000 WL 728821, *2 (10th Cir. June 7, 2000); *see also McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, (8th Cir. 2009); *Marie*, 402 F.3d at 15-17. These cases rest on reasons of efficiency. A private arbitration agreement cannot prevent the EEOC from investigating and bringing a public enforcement action against an accused employer. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002); *see also Marie*, 402 F.3d at 15-16. Thus, as the *Marie* court explained,

> [i]f the EEOC's investigation of an employer cannot be stopped by invoking an arbitration agreement, then forcing the employee and employer to begin an arbitration proceeding during the pendency of that investigation will automatically result in two adjudications involving the same issue at the same time: (1) the EEOC investigation of the employer at the employee's urging and (2) the arbitration between the employer and the employee that the employer initiated. This is quite inefficient. Further, the EEOC investigation might definitively resolve the claim: the employee might receive a notice that the EEOC did not wish to start an enforcement action, along with a rationale for this decision and a right to sue letter, and determine that she did not want to sue after all. . . .
>
> Thus, forcing employers to bring arbitration during the pendency of EEOC investigations is a waste of resources and is contrary to the general purposes of the FAA. It is also contrary to the scheme established in the federal employment discrimination statutes, which generally is designed to avoid inefficient, duplicative proceedings. . . .
>
> The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate.

402 F.3d at 16 (citations omitted).

For these reasons, Defendant's silence before the EEOC did not waive its right to arbitrate this dispute. Defendant filed a demand for arbitration three weeks after

Plaintiff's complaint was filed and a mere four days after the case was removed. Under these circumstances, there was no waiver.

Plaintiff next contends that before referring this matter to arbitration, the Court should determine whether the arbitration agreement's one-year limitations period is enforceable. (*See* Doc. # 13.) Again, the threshold question is whether this issue is one for the Court, or should be deferred to arbitration. Defendant urges that, under *Howsam*, questions relating to contractual time limitations are for the arbitrator. (Doc. # 17 at 4-5.) But regardless of the normal presumptions on the division of labor, the parties' agreement expressly provides that "where a party already has initiated a judicial proceeding" – which, obviously, Plaintiff has – "a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (*e.g.*, one (1) year for filing a claim)." (Doc. 7-3 at 10 of 45.) The agreement could not be more clear, and the Court exercises its discretion to resolve this question. *See Howsam*, 537 U.S. at 591 (noting that certain issues are for the court or the arbitrator "'unless the parties clearly and unmistakably provide otherwise'" (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986))); *cf. Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474-75 (1989) (noting that the FAA "confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement.*'" (quoting 9 U.S.C. § 4)) (emphasis in *Volt*).

Plaintiff's primary argument is that Defendant cannot, by contract, shorten the applicable statutes of limitations. (Doc. # 13 at 5-6.) The parties dispute whether resolution of this question is governed by the law of Ohio, as provided for the in agreement, or by the law of Colorado, the state in which Plaintiff worked. (*Compare*

10

Doc. # 17 at 2-4 (Defendant arguing for Ohio law) *with* Doc. # 13 at 6 (Plaintiff suggesting Colorado law applies).)  The Court need not resolve this question, because both states recognize that parties may contract to limit the time available to sue so long as the limitation is reasonable.  *See, e.g.*, *Med. Mut. of Ohio v. k. Amalia Enter. Inc.*, 548 F.3d 383, 393 (6th Cir. 2008) ("Under Ohio law, a contractual limitations provision that reduces the time available to bring an action on a contract is enforceable so long as it is reasonable and is stated in words that are 'clear and unambiguous.'" (quoting *Angel v. Reed*, 891 N.E.2d 1179, 1181 (2008))); *Hepp v. United Airlines, Inc.*, 540 P.2d 1141, 1143 (Colo. App. 1975) (noting that parties may shorten time periods "provided that the period in which the action must be brought is reasonable and that the provision has not been waived") (citations omitted).[4]  Although the agreement shortened the time for Plaintiff to bring his claims, there is nothing to suggest that the period was so abbreviated as to deny Plaintiff any real, substantive rights.  *See, e.g.*, B.H. Glenn, *Validity of Contractual Time Periods, Shorter Than Statute of Limitations, for Bringing Action*, 6 A.L.R.3d 1197 ("It appears to be generally recognized that the time allowed should be sufficient to allow the plaintiff to investigate and file his case within the limitation period, and that periods which are so short as to amount to a practical abrogation of the right of action, or which would require plaintiff to bring his action before his loss or damage can be ascertained, are unreasonable.").  As Defendant

---

[4]  Plaintiff cites to *First National Bank v. Mock*, 203 P. 272 (Colo. 1922) to argue that Colorado does not allow contractual interference with limitations periods.  Plaintiff misreads *Mock*.  While it is true that the court voided an agreement that *permanently* waived any statute of limitations – meaning claims would never be stale – the decision plainly stated that "waiver is generally held valid if it is for a reasonable time."  *Id.* at 273.

notes, Plaintiff was able to investigate his claims, hire an attorney, and file an EEOC charge all within six months – well under the one year period provided in the agreement. The Court finds that the one-year period is not unreasonable.

But that does not end the matter. Although not explicitly raised, Plaintiff's arguments all invoke the inequity of having a limitations period expire during a time in which he was exhausting the administrative procedures required to bring many of his claims. *See, e.g.*, *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1308 (10th Cir. 2005) ("[P]rior to the initiation of any [Age Discrimination in Employment Act] action, an individual must file a charge with the EEOC so that the agency can attempt to eliminate the alleged unlawful practice through informal methods."); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII."). (*See also* Doc. # 1 at 12 of 19 (asserting claims for violation of Title VII and ADEA).) Courts may toll limitations periods when justice and equity demand. *See, e.g.*, *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) ("Courts apply the doctrine of equitable tolling to suspend a statute of limitations period when 'flexibility is required to accomplish the goals of justice.'" (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996))); *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) (noting that the doctrine "is an equitable doctrine that permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity"); *Crego v. Baldwin-Lima-Hamilton Corp.*, No. 16515, 1998 WL 80240, *6 (Ohio App. Feb. 27, 1998) ("This court has recognized the use of equitable tolling in the past to prevent gross injustice to a plaintiff."). While this is not the prototypical case of a plaintiff misled

by the defendant into letting a limitations period lapse, the Court finds that tolling is appropriate here.  *Cf. Young v. United States*, 535 U.S. 43, 50 (noting that, while doctrine is primarily used in situations where the claimant has filed a defective pleading or been tricked by an adversary to let a deadline pass, "tolling might be appropriate in other cases").

Allowing the period to run during the EEOC proceedings undermines, if not eviscerates, the very efficiencies Defendant (correctly) relies on in advancing its opposition that it has in any way waived its right to have this matter proceed to arbitration.  As discussed above, the principal reason that a *defendant* need not invoke arbitration during an EEOC investigation is to avoid the time, money, and potentially conflicting results inherent in dual proceedings.  *See, e.g.*, *Marie*, 402 F.3d at 16 ("[F]orcing employers to bring arbitration during the pendency of EEOC investigations is a waste of resources and is contrary to the general purposes of the FAA.").  Moreover, seeing the EEOC proceedings through could result in a plaintiff deciding not to pursue any additional, arbitral remedies.  *Id.* ("[T]he EEOC investigation might definitively resolve the claim: the employee might receive a notice that the EEOC did not wish to start an enforcement action, along with a rationale for this decision and a right to sue letter, and determine that she did not want to sue after all.").  Similarly, these efficiencies would be lost if a *plaintiff* was required to invoke arbitration in order to protect his rights in the event that he was unsatisfied with the EEOC's conclusion.  As with the employer, there is no reason to "force the [employee] to make a wasteful, preemptive decision to arbitrate when [he] has no idea whether a dispute will still exist."

*Id.* at 17.[5] While Defendant's conduct may not have waived its right to invoke arbitration, neither should it be given the effect of denying Plaintiff his right to the arbitral forum to resolve this dispute on the merits.

Further, tolling in this case does not offend the basic principles underlying limitations periods. Limitations periods "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir. 2008) (quoting *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1058 (10th Cir. 2006)); *cf. Morrison*, 91 P.3d at 1056 (noting "statutes of limitations' goals of promoting justice, preventing unnecessary delay, and avoiding the litigation of stale claims"). Defendant cannot claim surprise or unfairness; Plaintiff's filing of the EEOC charge put Defendant on notice of Plaintiff's claims and of Plaintiff's intention to pursue those claims against Defendant.

Put simply, Defendant must take the bitter with the sweet. If it need not ask for arbitration during the EEOC proceedings, it cannot complain when Plaintiff does not either. The "primary purpose[ ]" of arbitration is "the cost-effective and expeditious resolution of disputes." *Shell Oil Co. v. CO2 Committee, Inc.*, 589 F.3d 1105, 1108 (10th Cir. 2009). But rather than gain these benefits by invoking arbitration at an early stage, Defendant sat silently while it – and Plaintiff – expended time and money during

---

[5] It is no answer to say that Plaintiff could have filed the arbitration and then asked for a stay. As the *Marie* court explained, efficiencies are lost "even if one party sought to stay the arbitration pending EEOC proceedings," as it "forc[es] the expenditure of resources to obtain a stay and run[s] a risk that the other party will oppose or that the arbitrator will decline the stay." 402 F.3d at 16 n.11.

the EEOC proceedings, raising the issue of arbitration only when it believed it was insulated by the limitations period. Under the circumstances of this case, equity and justice demand tolling the limitations period during the time of the EEOC investigation.

Omitting the time that this matter was before the EEOC from the limitations calculation, this case falls within the one-year period outlined in the agreement. Therefore, the Court determines that the arbitral process is not barred by a defense of untimeliness.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendant's Motion to Stay Proceedings Pending Referral to Sterling's Mandatory Arbitration Program (Doc. # 7) is GRANTED. It is

FURTHER ORDERED that Plaintiff's Motion for Legal Determination as to Unenforceability of One Year Claim Limitation (Doc. # 13) is DENIED. It is

FURTHER ORDERED that the instant matter is immediately stayed until arbitration between Plaintiff and Defendant has been completed, and the case will be administratively closed until such time as the Plaintiff files a Notice with the Court regarding the outcome of the arbitration, which Notice shall be filed within 10 days of issuance of the arbitration decision.

DATED: February  09 , 2010

BY THE COURT:

*Christine M. Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge